## CIRCUIT COURT OF LOUDOUN COUNTY

Brookfield Autumn Hill,
L.L.C., et al.

v.

Loudoun County et al.

March 5, 2013

Case No. 70901

By Judge Thomas D. Horne

Plaintiffs have filed a four count Bill of Complaint in which they seek declaratory relief (Count One), an injunction (Count Two), damages and an injunction for a violation of substantive due process (Count Three), and damages for an unconstitutional taking (Count Four). Defendants have demurred to the Complaint.

The following factual allegations are contained in the Bill and in the papers filed by the parties relative to the instant demurrers. "Autumn Hill" is the name given to a tract of land consisting of 74.8± acres located adjacent to the Town limits of the Town of Purcellville, Virginia. Autumn Hill was located in an area previously designated as subject to development in accordance with the Purcellville Urban Growth Management Plan or "PUGAMP." "PUGAMP" was an expression of intent by the Town of Purcellville and the County of Loudoun to share planning responsibilities for certain properties, like Autumn Hill, located in close proximity to the Town. As a result of actions taken by the governing bodies of the Town and County, "PUGAMP" will, in all probability, be rescinded, leaving oversight of development to the singular decision of the County.

On June 18, 1991, the Board of Supervisors of Loudoun County approved the rezoning of a portion, 51.8 acres, of the 74.8± acre Autumn Hill tract to PDH-30 and the remainder remained as zoned A-3, currently JLMA-3. It is noted that the JLMA portion of the Autumn Hill tract would be used for a

sewer system, water system, and building of residential homes. As part of the rezoning, the property was made subject to specific proffered conditions among those being "[t]he project will be served by public water and sewer. The Applicant shall be responsible for entering into an agreement with the Town of Purcellville with regard to the provision of utilities to Autumn Hill."

Plaintiff, Brookfield Autumn Hill (Brookfield Washington, L.L.C.) acquired the Autumn Hill property in 2002. It is alleged that plaintiff has, at considerable cost and expense, sought to develop the property pursuant to the existing zoning on the tract. With the decision to rescind "PUGAMP" and the attendant refusal of the Town to provide water and sewer to the site, plaintiff alludes to the impossibility confronting plaintiff to comply with the original zoning proffer conditioning development of the site in accordance with the water and sewer proffer.

It is the contention of the plaintiff that they are entitled to proceed with development in accordance with the original rezoning, substituting an Alternative Onsite System given the refusal of the Town to provide water and sewer to the site. Central to the argument of the plaintiff are the provisions of Va. Code § 15.2-2157(c), that state:

> When sewers or sewage disposal facilities are not available, a locality shall not prohibit the use of alternative onsite sewage systems that have been approved by the Virginia Department of Health for use in the particular circumstances and conditions in which the proposed system is to be operating.

Prior to submitting a site-plan for the development of the property, plaintiff met with representatives of the County in pre-application meetings. Noting concern of the county officials concerning the zoning proffer conditioning development on the Town providing water and sewer to the site, the plaintiff submitted a request for a zoning determination to the Zoning Administrator of Loudoun County. In response, the plaintiff received a letter from the County Proffer Manager on August 8, 2011.

In her response, the County Proffer Manager, determined that "the development of the Autumn Hill project requires the developer to obtain water and sewer service to the development from the Town" and that "the Town has no obligation to provide utility service." The response also indicated that there was "nothing to indicate that the [T]own has retracted or modified its previously stated position on the issue," which was to decline the extension of utility service to Autumn Hill. Finally, the Proffer Manager stated that no opinion regarding the installation of an Alternative Onsite System under § 15.2-2157(c) could be rendered because such decision was outside the scope of the County's authority.

As a result, on September 6, 2011, plaintiff appealed the decision to the Board of Supervisors pursuant to Va. Code § 15.2-2301.

On November 9, 2011, the Board voted to uphold the decision rendered by the County Proffer Manager. A timely appeal was taken from the action of the Board to this Court pursuant to Va. Code § 15.2-2301.

This Court is now asked to decide by way of declaratory relief that the County may not prohibit the use of an Alternative Onsite System for water and sewer that has been approved by the Virginia Department of Health and, additionally, that Autumn Hill may be developed in accordance with the PDH-30 district of the 1972 Loudoun County Zoning Ordinance pursuant to § 15.2-2157 and § 32.1-172 of the Va. Code.

The Declaratory Judgment Act has the express purpose to "afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." Va. Code § 8.01-191. "Controversies involving the interpretation of . . . statutes, municipal ordinances, and other governmental regulations may be so determined, and this enumeration does not exclude other instances of actual antagonistic assertion and denial of right." Va. Code § 8.01-184. This statute is consistent with the well-settled law that the test for determining the efficacy of a declaratory judgment proceeding is predicated on whether "[t]he controversy [is] one that is justiciable, that is, where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment." *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964).

The uncertainty surrounding whether the proffer or Virginia Code § 15.2-2157(c) governs poses an impasse to the development of the property. The County recognizes in their papers that, "[i]n the context of the present case, Plaintiffs may, in effect, appeal the decision of the Board and seek to obtain a declaratory judgment that the Proffer does not prohibit the Plaintiffs from developing the project approved by the Rezoning without utilities from the Town." It complains that "plaintiffs seek that relief only indirectly and do not stop there. Plaintiffs ask the Court to grant declaratory judgment as to future, unfiled land development applications, to enjoin the denial of future unfiled land development applications, to grant damages against the County even though no application or other request for permit has been submitted to or denied by the Board, and to grant damages for a taking of Plaintiffs' property even though no land development application or other request for permit with respect to the property has been submitted to or denied by the Board." Additionally, the Proffer Administrator and Board on Appeal further enlarged the controversy when both expressly refrained from rendering an opinion in regard to whether the County believes that interpreting § 15.2-2157(c) to permit the construction of an Alternative Onsite System in satisfaction of the proffer is outside of the authority of the Proffer Administrator pursuant to Va. Code § 15.2-2299.

Importantly, the impasse in part does not arise because the Administrator or the Board refused to recognize the primacy of § 15.2-2157(c), but that to express such an opinion permitting the construction of an Alternative Onsite System in satisfaction of the proffer would be outside of their authority. Thus, the Administrator's opinion and thus the Board's decision on appeal refusing to rule on the application of § 15.2-2157(c) creates this present impasse.

While the County's arguments respecting the speculative nature of harm to future development plans are not a bar to the pursuit of declaratory relief, Count One, they are supportive of the demurrers to the remaining counts.

Declaratory relief does not require that the County grant plaintiff the approval to proceed with the site's development. "[A] developer need not have governmental approval to proceed with a project before a party adversely affected may seek relief via declaratory judgment." *River Heights Assocs., Ltd. P'ship v. Batten*, 267 Va. 262, 268-69 (2004). *See also Hoffman Family, L.L.C. v. Mill Two Assocs. P'ship*, 259 Va. 685, 694 (2000) (upholding declaratory judgment because land developer had taken "substantial steps, with significant financial expense," in crafting development plans).

This Court believes that it is clear from *River Heights* that plaintiff is not required to submit a development plan for approval before qualifying for declaratory relief. To the contrary, *Hoffman* establishes that plaintiff may receive declaratory relief upon the demonstration that it undertook costly measures in an effort to develop the site. This Court finds that the plaintiff has undertaken the necessary steps pursuant to *Hoffman* to warrant declaratory relief. Plaintiff hired engineers and other professionals, submitted applications, and underwent an appeals process in order to begin developing the site. Plaintiff's efforts demonstrate a continued interest in developing the site and fail to reach the speculative nature that the County contends. Furthermore, the County Proffer Manager's letter demonstrates that the County recognizes the authority of Virginia Code § 15.2-2157, even though the County declined to extend its application to the site. By granting declaratory relief, this Court seeks to clarify the rights in which each party reserves regarding the development of the site. As such, this Court overrules the demurer as to Count One.

As previously noted, the Court finds that Count Two remains too speculative as this Court would enjoin the County and Board from refusing to approve developmental plans that do not yet exist. "[The] Declaratory Judgment Act does not give trial courts the authority to render advisory opinions, decide moot questions, or answer inquiries that are merely speculative." *Treacy v. Smithfield Foods, Inc.*, 256 Va. 97, 104 (1998). Enjoining future hypothetical plans that plaintiff may or may not present to the Board requires the type of speculation that is not permitted for this Court to order an injunction.

This Court further believes that Count Three suffers from a lack of certainty as damages are sought for a denial of plans not filed and property interests that are yet to be the objects of deprivation. "[W]hen a landowner claims a 'zoning ordinance is invalid as applied to his specific property, he must exhaust adequate and available administrative remedies before proceeding by declaratory judgment to make a direct judicial attack on the applied constitutionality of the ordinance'." *Rinker v. City of Fairfax*, 238 Va. 24, 29 (1989). Without the submission of a land development application, this Court cannot find that Plaintiff has exhausted the adequate and available administrative remedies available.

This Court further believes that Count Four remains too speculative for the Court to award damages and attorney's fees under the assertion that the prohibition against constructing an Alternative Onsite System constituted a taking without due process and just compensation. "There is not unconstitutional taking unless the government's action deprives the landowner of all economic use of the land." *Helmic v. Town of Warrenton*, 254 Va. 225, 233 (1997). Without more, this Court rejects the assertion that the site maintains no economic value in the absence of an Alternative Onsite System.

This Court believes that a determination of rights regarding whether Autumn Hill may be developed with an Alternative Onsite System pursuant to § 15.2-2157 and § 32.1-172 in satisfaction of the proffer is proper in this case. However, requests that require this Court to hypothesize theoretical land development plans in its legal analysis are too speculative to warrant relief. Accordingly, this Court overrules the demurrer as to Count One and sustains the demurrer as to Counts Two, Three, and Four.